IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD WATSON,

   Plaintiff,

   vs.         Case No. 09-1200-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

   Defendant.

MEMORANDUM AND ORDER

  Plaintiff Donald Watson has applied for Social Security disability benefits. His application was denied by the ALJ for the first time on August 28, 2007. The Appeals Council remanded the case back to the ALJ on January 19, 2008. The ALJ denied the application again on September 3, 2008, and a request for review of that decision by the Appeals Council was denied on May 15, 2009. Watson asserts three allegations of error. First, he claims the ALJ failed to follow the *de minimus* standard of step two by not finding that Watson had the severe impairment of depression. Second, Watson claims the ALJ erred by not giving controlling weight to the medical opinion of Dr. Xu, and instead improperly gave controlling weight to a government-paid medical examiner. Finally, heclaims the ALJ erred by improperly finding at step five that Watson could perform other work in the economy.

Plaintiff-claimant Watson was born on May 2, 1957. He has stated that he became disabled beginning July 19, 2005. He has at least a high school education, and has previously worked as a tool and dye machinist and a fireplace installer. Watson complains of a variety of ailments, including bilateral carpel tunnel syndrome, hypertension, and depression. The ALJ found the bilateral carpel tunnel syndrome and the hypertension were severe impairments and did not find that Watson suffered from the severe impairment of depression. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 17-24).

The Commissioner determines whether an applicant is disabled using a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R. §§ 404.1520 and 416.920. The applicant has the initial burden of proof in the first three steps: he must show that he is engaged in substantial gainful activity, that he has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1. *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). If a claimant shows that he cannot return to his former work, the Commissioner has the burden of showing that he can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C. 405(g) of the Social Security Act. Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

"Substantial evidence" means more than a scintilla, but less than a preponderance. It is satisfied by evidence that a reasonable mind might accept to support the conclusion. *Ray*, 865 F.2d

at 224. The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion. *Id*. The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law. Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

Watson first argues that the ALJ erred by not finding that Watson had a severe impairment of depression. Severe impairments are those that significantly limit a claimant's ability to do basic work activities. SSR 96-3p. Additionally, to be considered severe, an impairment must last for at least twelve consecutive months. 20 C.F.R 404.1509. Watson argues that his own testimony, along with medical records, constitutes substantial evidence that his depression is a severe impairment. Watson first cites records prepared by Donna Powers, an A.R.N.P. whose opinions the ALJ specifically chose not to give controlling weight to because she was not a treating medical doctor. Furthermore, the ALJ noted that Ms. Powers had described Watson's condition as "stable" several times, which contradicted other assertions made by her regarding Watson's mental functional limitations.

The ALJ did give considerable weight to the opinion of Dr. T. A. Moeller, a consultative licensed psychologist who performed a Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") on Watson in June of 2007, and determined that he had no severe mental disabilities. Finally,

3

Watson's own testimony regarding his depression must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R 1508. The ALJ did not find any substantial supporting medical evidence in the record. Therefore, Watson's testimony need not be given controlling weight in determining the severity of the alleged impairment. The ALJ properly found that Watson's alleged depression is not a severe impairment.

Next, Watson argues that the ALJ erred in giving controlling weight to the medical opinions of Dr. Moeller, while failing to give any weight to the medical opinions of Dr. Lin Xu. However, the ALJ did not completely discount the opinions of Dr. Xu. The ALJ must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. During the time Dr. Xu treated Watson (November 2007 to March 2008), he indicated some mental limitations and a low GAF (Global Assessment of Functioning). Substantial evidence exists that shows Dr. Xu's opinion (Tr. 358-59) was not supported by any accompanying medical evidence or reports, and the opinion was inconsistent with other evidence in the record as to Watson's ability to function in daily life. The ALJ did not completely discount Dr. Xu's opinions on these matters, but instead acknowledged that Dr. Xu was treating Watson for both a cocaine dependency and major depression, and that Watson has since shown improvement. This would indicate that the ALJ found Dr. Xu's medical opinions credible, but that they were only relevant to the few months directly following Watson's relapse into cocaine dependency.

While it is true that Watson's GAF did not improve during the short time that Dr. Xu treated him, the ALJ cites the facts that Watson moved into the Union Rescue Mission, he is taking classes, and does chores as evidence of improvement. Furthermore, there is medical evidence of

improvement, because the ALJ does give substantial weight to Dr. Moeller's psychological evaluation of Watson performed in June of 2007. Dr. Moeller determined that Watson did not exhibit any psychological disabilities. Dr. Moeller's opinions were given substantial weight because he is a licensed psychologist and he used an MMPI-2 to evaluate Watson. Further, his opinion is supported well in the objective medical record. The ALJ properly evaluated and utilized the medical opinions of both Dr. Xu and Dr. Moeller.

Finally, Watson claims the ALJ erred by adopting the testimony of Cindy Younger, the vocational expert. Specifically, Watson alleges that Ms. Younger's testimony regarding the jobs available to someone with Watson's age, experience, and his residual functional capacity (RFC) is inconsistent with the Dictionary of Occupational Titles (DOT). Watson's RFC limits him to frequent repetitive hand controls, occasional repetitive grasp and grab, and keyboarding twenty-five minutes on and thirty-five minutes off, among other limitations. However, Watson alleges that the DOT states some of the jobs Ms. Younger said would be available to someone with Watson's RFC require contradictory abilities, such as frequent handling, frequent fingering, and frequent interaction with computers.

First, it should be noted that the language describing the limitations in Watson's RFC does not correspond exactly with the language used in the DOT. This does not itself indicate a lack of consistency. Furthermore, Ms. Younger was asked specifically to consider whether her answers were inconsistent with the DOT. She testified that they were not. The discrepancies cited by Watson are no more than minor differences in language, and the vocational expert would have had to consider the demands of each job individually in order to answer the ALJ's interrogatories

5

truthfully. Therefore, the ALJ did not err in adopting the testimony of the vocational expert and properly found that Watson could do other work in the national and local economies.

IT IS ACCORDINGLY ORDERED this 5th day of August, 2010, that the plaintiff's appeal is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE